IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| JAX-PALATKA FARMS LLC, a Delaware limited liability company,<br><br>          Plaintiff,<br><br>v.<br><br>REINHOLD CORPORATION, a Florida corporation,<br><br>          Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. _____ |

## COMPLAINT

JAX-PALATKA FARMS LLC, a Delaware limited liability company ("Plaintiff" or "Jax-Palatka"), by and through its undersigned counsel, sues REINHOLD CORPORATION, a Florida corporation ("Defendant" or "Reinhold," and together with Plaintiff, the "Parties"), and alleges as follows:

### JURISDICTION, VENUE AND PARTIES

1.      This is an action for breach of contract seeking specific performance, or alternatively, money damages with a value in excess of $75,000, exclusive of fees and costs. Additionally, the property for which specific performance is sought is valued in excess of $75,000.

2.      Plaintiff, Jax-Palatka, is a Delaware limited liability company authorized to transact business in the State of Florida. Jax-Palatka has two members, and those members are citizens of New York and the District of Columbia. Accordingly, for purposes of diversity jurisdiction, Jax-Palatka is a citizen of the State of New York and the District of Columbia.[1]

_____

[1] Jax-Palatka's two members are a trust and an individual; the individual is domiciled in New York, and the trust has two trustees, who are individuals domiciled in New York and the District of Columbia.

1

3.    Defendant, Reinhold, is a Florida corporation with its principal place of business in Clay County, Florida, and for purposes of diversity jurisdiction is a citizen of the state of Florida.

4.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the Plaintiff and Defendant, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.  In addition, the property for which specific performance is sought is valued in excess of $75,000.

5.    Venue is appropriate, pursuant to 28 U.S.C. § 1391, because the events or omissions giving rise to this action occurred in Clay County, Florida, the property that is the subject of this action is located in Clay County, Florida, and because the Defendant resides in Clay County, Florida.

6.    This Court has personal jurisdiction over the Defendant as its principal place of business is within this Middle District of Florida.

### BRIEF FACTUAL SUMMARY

7.    In 2020, Jax-Palatka (as buyer) and Reinhold (as seller) executed a Purchase and Sale Agreement ("PSA"), pursuant to which Reinhold agreed to sell approximately 13,431 acres of undeveloped land in Clay County, Florida, for a purchase price of $42,500,000.00.  The property to be purchased included a 1,389-acre tract constituting Phase 3 of the Greens Creek Mitigation Bank owned by Reinhold (referred to as the "Phase 3 Parcel").

8.    The Phase 3 Parcel is located within a mitigation bank (which is heavily regulated for environmental preservations purposes).  In order to afford Reinhold adequate time to amend its mitigation banking permits, the closing of the Phase 3 Parcel was initially set to occur under the PSA no later than December of 2024, and was later extended to July 29, 2025, nearly 5 years after the initial closing.  The purchase price under the PSA for the acreage within the Phase 3

2

Parcel was $2,750 per acre.

9.    In the following months and years, Jax-Palatka regularly inquired with George Egan, President and CEO and Reinhold, regarding the closing of the Phase 3 Parcel and the status of amending its mitigation banking permits. Mr. Egan periodically provided updates with pessimistic views, often emphasizing the complex nature of the permit-amending process and expressing frustration with the relevant governmental agencies.

10.    In early 2024, Jax-Palatka—to its shock and disappointment—learned that Reinhold had made no meaningful effort to amend its mitigation banking permits to release the Phase 3 Parcel from the mitigation bank. In fact, Reinhold has never even filed an initial application with the Army Corps of Engineers or the St. Johns River Water Management District to release the Phase 3 Parcel, which is the first step is seeking to release the Phase 3 Parcel.

11.    For years, Reinhold's actions and statements incident to its purported effort to amend its mitigation banking permits caused Jax-Palatka to believe that Reinhold was actively taking steps in good faith to amend its permits, substantively misleading and misinforming Jax-Palatka.

12.    Providing insight into the motives of Reinhold's misleading statements and actions, the value of the Phase 3 Parcel acreage has increased at least threefold since the execution of the PSA, increasing the value of the acreage from nearly $4 million to $12 million.

13.    While Jax-Palatka has consistently endeavored to resolve this dispute in good faith, after years of delay, being "slow-rolled" and substantively misled, this lawsuit is warranted to rectify Reinhold's effort to evade its contractual obligations and deny Jax-Palatka the benefit of its bargain under the PSA.  Accordingly, Jax Palatka brings this action for breach of contract seeking specific performance, or alternatively, money damages.

**GENERAL ALLEGATIONS**

A. **Basic Terms of the Purchase and Sale Agreement dated April 23, 2020 and the Amendments Thereto.**

14. Jax-Palatka and Reinhold executed that certain Purchase and Sale Agreement dated April 23, 2020 (the "PSA"), pursuant to which Jax-Palatka agreed to purchase, and Reinhold agreed to sell, approximately 13,431 acres of undeveloped land situated in Clay County, Florida, comprised of, among other parcels, (i) 11,698 acres referred to as the "Base Parcel," (ii) 1,389 acres of un-activated Phase 3 of Greens Creek Mitigation Bank (the Greens Creek Mitigation Bank is referred as the "Mitigation Bank," and the 1,389 acres within the Mitigation Bank (which Reinold contracted to sell) is referred to as the "Phase 3 Parcel"), (iii) 22 acres referred to as "Storm Water Pond Parcel" and (iv) 322 acres referred to as the "Iluka Buffer Parcel," to be optioned to Purchaser through an option to purchase (referred to as the "Iluka Option"). The Base Parcel, the Phase 3 Parcel, the Storm Water Pond Parcel, and the Iluka Buffer Parcel are collectively referred to as the "Property."

15. The PSA contemplated up to four closings (depending on whether Purchaser exercised the Iluka Option), to wit: (i) a closing on the Base Parcel on or after July 31, 2020, but no later than December 31, 2020; (ii) a closing on the Phase 3 Parcel on or prior to December 31, 2024; (iii) a closing on the Storm Water Pond Parcel on or before December 31, 2023; and (iv) a potential closing on the Iluka Buffer Parcel pursuant to the Iluka Option. PSA, §§ 2.3 and 11.1.

16. The total purchase price for the Property was $42,500,000.00 (the "Purchase Price"). As relevant here, the Purchase Price was subject to potential adjustment based on "Seller's inability to amend its mitigation banking permit to eliminate or reduce the acreage currently within the … Mitigation Bank." PSA, § 2.1. The Purchase Price allocable to the Phase 3 Parcel was its acreage (1,389) multiplied by $2,750 (i.e., $3,819,750). PSA. § 2.2(c). Upon the execution of the

PSA, and pursuant to its terms, Jax-Palatka provided a deposit of $1,500,000 to be held in escrow (the "Earnest Money"). PSA, § 3.1.

17. The PSA further provides that in the event that Reinhold has not yet obtained a release of the Phase 3 Parcel from the Mitigation Bank as of the initial Closing (as defined in the PSA), $450,000 of the Earnest Money shall remain in escrow until closing of the Phase 3 Parcel, at which time the Earnest Money shall be credited to Jax-Palatka's purchase of such parcel. PSA, §§ 3.1 and 11.1. Presently, $450,000 of the Earnest Money provided by Jax-Palatka remains in escrow.

18. The Parties amended the PSA pursuant to that certain First Amendment to Purchase and Sale Agreement dated September 8, 2020 (the "First Amendment"), that certain Second Amendment to Purchase and Sale Agreement dated March 23, 2021 (the "Second Amendment") and that certain Third Amendment to Purchase and Sale Agreement dated October 31, 2024 (the "Third Amendment"). The First Amendment, the Second Amendment and the Third Amendment shall be referred to as the "Amendments." True and correct copies of the PSA and the Amendments are attached hereto as Composite Exhibit "A."

19. Under the Third Amendment, the closing date with respect to the sale of the Phase 3 Parcel was extended from December 31, 2024 (the initial closing deadline pursuant to section 11.1of the PSA), to July 29, 2025.[2]

---

[2] In the Third Amendment, the Parties extended the closing date with respect to the Phase 3 Parcel from December 31, 2024 (the initial closing deadline set forth in section 11.1 of the PSA) to April 30, 2025. Additionally, in the Third Amendment, the Parties agreed that if the Phase 3 Parcel has not been released from the Mitigation Bank on or before March 31, 2025, and if the Parties have not otherwise agreed in writing to the purchase of other property of Reinhold in lieu of the Phase 3 Parcel, then the closing date of the Phase 3 Parcel shall be extended an additional 90 days. As of March 31, 2025, Reinhold had failed to release the Phase 3 Parcel from the Mitigation Bank, and Jax-Palatka and Reinhold had not otherwise agreed in writing for Reinhold to sell and Jax-Palatka to purchase other property from Reinhold in lieu of the Phase 3 Parcel. Consequently, the closing date with respect to the Phase 3 Parcel was extended an additional 90 days—from April 30, 2025 to July 29, 2025.

20. Under the PSA, Reinhold contracted and agreed to sell the entire 1,389-acre Phase 3 Parcel, subject to a reduction in the total acreage to the extent that Reinhold is unable to amend its mitigation banking permits to release all or some portion of the acreage from the Mitigation Bank. Reinhold has deliberately made no credible effort to amend its mitigation banking permits to release the Phase 3 Parcel from the Mitigation Bank and failed to convey title of such parcel to Jax-Palatka, thereby breaching the implied covenant of good faith and fair dealing, as well as the PSA and its Amendments. Consequently, Jax-Palatka is entitled to specific performance, or alternatively, money damages.

**B. The Basics of Mitigation Banks under Florida Law and Relevance to the Present Case.**

21. A mitigation bank is a tract of real property that is subject to certain rules and requirements relating to the permissible use of the property, providing for the restoration, preservation, or creation of wetlands, uplands, or other aquatic areas. The purpose of mitigation banking is to designate certain property for environmental rehabilitation, restoration and preservation (the mitigation bank site), which offsets the damage to ecological habitats caused by developments elsewhere, through the restoration or preservation of the ecosystems within the mitigation bank site.

22. A mitigation bank earns "mitigation credits" based on the increase in ecological value that the mitigation bank produces. The degree of that improvement, and the resulting number of credits awarded, is determined through a standardized scientific assessment known as the Uniform Mitigation Assessment Method ("UMAM"). When a development project causes unavoidable impacts to protected natural resources, the developer is required to offset the ecological harm by either restoring the affected site itself or purchasing UMAM mitigation credits. For example, developers may destroy or alter wetlands for commercial or residential construction,

6

and to offset this, they may purchase "credits" from approved mitigation banks, which have restored wetlands within the mitigation bank site.

23. In Florida, mitigation banks are authorized and governed by Part IV of Chapter 373, Florida Statutes, and are permitted by the Department of Environmental Protection or the regional water management district. *See* Fla. Stat. § 373.4136.

24. In the present case, the Phase 3 Parcel (consisting of 1,389 acres) is within the Greens Creek Mitigation Bank (referred to as the Mitigation Bank), which is owned by Reinhold. To provide Reinhold time to amend its mitigation banking permits, the PSA deferred closing of the Phase 3 Parcel to no later than December 31, 2024 (nearly four years after execution of the PSA).

25. Notably, Phase 3 of the Mitigation Bank is "unactivated," meaning that (i) no conservation easement has been imposed on the Phase 3 Parcel and (ii) the ecological milestones required by the applicable regulatory agencies (i.e., the Florida Department of Environmental Protection ("FDEP"), the Army Corps of Engineers ("ACOE"), or the St. Johns River Water Management District ("SJRWMD")) are not yet complete. Mitigation credits for the Phase 3 Parcel have not been released or sold.

26. Each of the ACOE and the SJRWMD instruments contemplate that the Phase 3 Parcel may be removed from the Mitigation Bank.

27. Accordingly, a release of the Phase 3 Parcel (or substantially all of such parcel) from the Mitigation Bank is quite feasible and likely, assuming Reinhold were to make any attempt to obtain a release.

**C.**    **The Relevant Provisions of the PSA Establishing Reinhold's Obligation to Amend its Mitigation Banking Permits and Sell the Phase 3 Parcel.**

28.    The PSA is clear: Reinhold agreed to "sell, assign, and convey to Purchaser, and Purchaser agree[d] to purchase from Seller . . . the 'Property.'" PSA, § 1.1.  The PSA defines "Property" to include the Phase 3 Parcel (which is defined under the PSA to include the entire 1,389-acre parcel).  PSA, § 1.1.

29.    Reinhold's agreement to sell the Phase 3 Parcel is further evidenced by the scheduled closing of the Phase 3 Parcel under the PSA. *See* PSA, § 2.3 (providing for "A closing on the lands to be released from the Mitigation Bank on or prior to December 31, 2024"). PSA, § 2.3.

30.    Additionally, in anticipation of the agreed upon sale of the Phase 3 Parcel, Jax-Palatka placed $450,000 of Earnest Money in escrow in September of 2020 (which funds remain in escrow) to be credited against Jax-Palatka's purchase of the Phase 3 Parcel at closing. *See* PSA, § 3.1 (stating "if as of the initial Closing Seller has not yet obtained a release of lands from the Mitigation Bank, the Closing on the [Phase 3] Parcel shall be deferred and $450,000 of the Earnest Money shall be allocated thereto and shall remain in escrow"); PSA, § 11.1 (stating "If the lands from the Mitigation Bank are not sold at the initial closing, $450,000 of the Earnest Money shall be carried forward for the Mitigation Bank Closing.").

31.    Reinhold's obligation to sell the Phase 3 Parcel (and the corresponding adjustment of the Purchase Price of such parcel) was subject to Reinhold's ability to amend its mitigation banking permits to release all or some portion of the acreage of the Phase 3 Parcel from the Mitigation Bank.  If Reinhold were truly unable to amend its permits to release all 1,389 acres of the Phase 3 Parcel, Reinhold was obligated to convey only such portion of the Phase 3 Parcel that was released from the Mitigation Bank. *See* PSA, § 2.1 (stating "The Purchase Price [of the Phase

8

3 Parcel] will be subject to adjustment based on … Seller's ability to amend its mitigation banking permit to eliminate or reduce the acreage currently within the … Mitigation Bank."); PSA, § 2.2(c) (stating "[t]he Purchase Price payable at the Closing on lands from the [Phase 3] Parcel shall be its acreage multiplied by $2,750.  If Seller is unable to obtain a release of the acreage from the Mitigation Bank …, the remaining Earnest Money Deposit shall be returned to Purchaser.").

**D.**      **Reinhold Breached the PSA by Failing to Amend its Mitigation Banking Permits and Convey Title to the Phase 3 Parcel.**

32.      In the months and years following the closing of the Base Parcel in September 2020, Jax-Palatka regularly asked Reinhold about the status of its efforts to release the Phase 3 Parcel from the Mitigation Bank.

33.      George Egan, President and CEO of Reinhold, provided updates, consistently painting a misleading and pessimistic landscape of obstacles.  Mr. Egan often mentioned the purported difficulties with Reinhold's Board of Directors, as well as the complex nature of the necessary processes to release the Phase 3 Parcel.  Additionally, he repeatedly expressed frustration with the governmental agencies involved with obtaining the release.

34.      On one such occasion, Mr. Egan advised representatives of Jax-Palatka that, despite Reinhold's "best efforts," the release process would be extremely difficult, if not impossible.  However, contrary to these representations, a release of the Phase 3 Parcel is quite feasible and likely—*if Reinhold had tried*.

35.      In early 2024, Jax-Palatka learned that Reinhold has, in fact, made no application with the ACOE or the SJRWMD for a release of the Phase 3 Parcel.

36.      In short, Reinhold (specifically, Mr. Egan, in his capacity as President, CEO and member of the Board of Directors) purposefully misinformed and misled Jax-Palatka.  Reinhold (through Mr. Egan) routinely stated a hyperbole of difficulties and burdens associated with

amending its mitigation banking permits, inducing Jax-Palatka to believe that Reinhold was actively taking steps to amend its permits but meeting fierce resistance. Instead, Reinhold deliberately made no meaningful effort to amend its permits and has not even filed an initial application to release the Phase 3 Parcel from the Mitigation Bank.

37.     Making matters worse, on or about February 2, 2024, in a phone call with representatives of Jax-Palatka, Mr. Egan disclosed – *for the first time, nearly four years after execution of the PSA* – that Reinhold denied any obligation either to amend its mitigation banking permits or convey any portion of the Phase 3 Parcel to Jax-Palatka.

38.     Contrary to the terms of the PSA, as well as the Parties' intent and expectation, Reinhold treats the PSA as providing Reinhold a unilateral option to sell the Phase 3 Parcel, in effect a "seller's put option." However, where the Parties intended to create an option, the PSA did so in explicit terms. For example, with respect to the purchase and sale of the Iluka Buffer Parcel, the Parties used language that clearly describes an option—the "Iluka Option."[3] Had the Parties intended for the sale of the Phase 3 Parcel to be an option, they would have clearly done so.

39.     The reality is that the Phase 3 Parcel acreage has at least tripled in value (from $4 million to $12 million), and Reinhold's purposeful efforts to evade its obligations under the PSA reflect nothing more than seller's remorse and the desire to keep for itself the increase in value.

40.     Reinhold has breached the PSA and the implied covenant of good faith and fair dealing, denying Jax-Palatka the benefit of its bargain.

---

[3] Section 9.4 of the PSA, addressing the Iluka Option, expressly identifies "Seller, as optionor," and "Buyer, as optionee," requires an "Option Fee," sets a definite expiration date, and states that "Buyer may exercise its option by notice in writing to Seller." PSA, § 9.4.

41. All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

## COUNT I
### (Breach of Contract)

42. This is an action against Reinhold for breach of contract seeking specific performance, or alternatively, money damages.

43. Plaintiff re-alleges and incorporates paragraphs 1 through 41, as though fully set forth herein.

44. Upon executing the PSA and its Amendments, Jax-Palatka and Reinhold entered into a valid, binding contract with clear and definite terms.

45. Jax-Palatka has no adequate remedy at law because the cause of action arises from the breach of a contract for the purchase of real property.

46. Jax-Palatka has timely performed its obligations under the PSA and its Amendments.

47. Reinhold breached the implied covenant of good faith and fair dealing, as well as the PSA and its Amendments, by deliberately making no reasonable effort to amend its mitigation banking permits to release the Phase 3 Parcel from the Mitigation Bank and failing to convey title of such parcel to Jax-Palatka.

48. Jax-Palatka has been damaged as a consequence of Reinhold's breach.

49. Equity and justice support and require the relief requested herein.

WHEREFORE, Plaintiff, Jax-Palatka, respectfully requests entry of a judgment against Defendant, Reinhold, adjudicating and granting: (i) specific performance requiring Reinhold to amend its mitigation banking permits to release the Phase 3 Parcel from the Mitigation Bank and convey the released parcel to Jax-Palatka, or alternatively, (ii) money damages for (a) in an amount

equal to the fair market value of the Phase 3 Parcel as of the date of Reinhold's breach of the PSA and its Amendments, less the purchase price of such property in the PSA, (b) all Earnest Money funds remaining in escrow, (c) pre-judgment interest, due diligence and title investigatory expenses and attorneys' fees and costs, and (iii) such other relief as the Court deems just and proper.

DATED this 2nd day of July 2026.

**ROGERS TOWERS, P.A.**

By: ___/s/ *Mark S. Mitchell*_____
Mark S. Mitchell
Florida Bar No.: 018039
1301 Riverplace Boulevard, Suite 1500
Jacksonville, Florida 32207
(904) 398-3911 (Telephone)
(904) 396-0663 (Facsimile)
mmitchell@rtlaw.com
lcain@rtlaw.com

ATTORNEYS FOR PLAINTIFF