UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAX-PALATKA FARMS LLC, a Delaware limited liability company,

Plaintiff,

vs. CASE NO. 3:26-cv-01708-JEP-LLL

REINHOLD CORPORATION, a Florida corporation,

Defendant.
______________________________________/

**REINHOLD CORPORATION'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Reinhold Corporation ("Reinhold"), pursuant to Fed. R. Civ. P. 12(c), hereby moves this Court to enter judgment on the pleadings on Plaintiff's claims for (1) unliquidated money damages because money damages are limited to the return of the agreed-upon escrow deposit by the parties' contract, and (2) specific performance because it is fatally uncertain and because it is barred by the applicable statute of limitations since the alleged breach occurred more than one year prior to the filing of the Complaint (Doc. 1, Compl.).

## I. PRELIMINARY STATEMENT

This case concerns a dispute over the potential conveyance of up to 1,389 acres of undeveloped land (the "Phase 3 Parcel") located within a federally and state regulated wetland mitigation bank in Clay County known as the Greens Creek Mitigation Bank ("Mitigation Bank"). The possible sale and conveyance of the

Phase 3 Parcel is a small part of a large and multi-tiered transaction through which Reinhold has already conveyed more than 11,500 acres of land to Plaintiff Jax-Palatka Farms LLC ("Jax-Palatka") pursuant to the parties' Purchase and Sale Agreement ("PSA"). (Doc. 1-1, PSA.) The bulk of the land, known as the "Base Parcel," is not part of any mitigation bank and was sold and transferred in September 2020.

Unlike Base Parcel, the transfer of any part of the Phase 3 Parcel could not occur without the governing regulatory agencies approving its release from the Mitigation Bank[1]. The PSA anticipated that Reinhold might not be able to obtain these regulatory approvals to release of any acreage in the Phase 3 Parcel. It further anticipated that if Reinhold obtained a release of only some of the acres, the Phase 3 Parcel purchase price would be reduced according to the formula in the PSA based on an agreed upon price per acre and the number of acres not released. In any event, the parties agreed, as only they legally could, that any conveyance to Jax-Palatka would be limited to the acres approved for release from the Phase 3 Parcel.

Reinhold has never obtained a release of any portion of the Phase 3 Parcel from the Mitigation Bank. As a result, when the Phase 3 closing deadline came, there was no released portion of the Phase 3 Parcel to convey to Jax-Palatka. Jax-Palatka now seeks a judgment of specific performance requiring Reinhold to

[1] Defined terms not defined by this Motion are defined by the PSA.

amend its mitigation banking permits to release the Phase 3 Parcel from the mitigation bank, and convey it to Jax-Palatka, or alternatively unliquidated money damages.

Jax-Palatka's claim for unliquidated money damages is contrary to the direct language of the PSA. Except for specific exceptions not applicable here, the PSA limited Jax-Palatka's available monetary remedy for pre-closing breaches to the return of the earnest money deposit. As a result, judgment on the pleadings in Reinhold's favor on Jax-Palatka's claim for money damages is appropriate.

Judgment for Reinhold on Jax-Palatka's request for specific performance is also appropriate because the claim lacks certainty and is time-barred by the applicable statute of limitations. Jax-Palatka has requested "specific performance requiring Reinhold to amend its mitigation banking permits to release the Phase 3 Parcel from the Mitigation Bank and convey the released parcel to Jax-Palatka." The Court cannot order Reinhold to specifically perform by conveying the "released parcel" because no acres have been released and there simply is no identifiable released portion of the Phase 3 Parcel to transfer. On the request to compel Reinhold to "amend its permits and release the Phase 3 Parcel from the Mitigation Bank," Reinhold does not have the unilateral power to amend permits, only the governing regulatory agencies have that authority, and it is within those agencies' discretion to deny, allow or set conditions for the release of acreage from a mitigation bank. The involvement of the regulatory agencies also raises separation of powers concerns as the Court does not have the authority to order

the non-party, regulatory agencies to exercise their discretion to amend permits. Specific performance is accordingly not a viable remedy here.

Moreover, the contractual deadline for obtaining the release of the Phase 3 Parcel was June 30, 2025, and the parties agreed time was of the essence in their contract. The pleadings show that Jax-Palatka knew Reinhold had not obtained a release by that date. Under Florida law, the statute of limitations for specific performance begins when the agreement is breached. Here, the alleged breach occurred no later than June 30, 2025 when Reinhold allegedly failed to obtain release of the Phase 3 Parcel. Jax-Palatka did not file suit until July 2, 2026, — two days after the one-year limitations period for specific performance.

For these reasons, Reinhold requests that the Court grant judgment on the pleadings in its favor, and limit Jax-Palatka's remedy to the bargained-for return of the earnest money allocated to the Phase 3 Parcel.[2]

## II. UNDISPUTED FACTS BASED UPON THE COMPLAINT

1. On or about April 23, 2020, Reinhold and Jax-Palatka entered into the PSA under which Reinhold agreed to sell to Jax-Palatka up to approximately 13,431 acres of undeveloped land in Clay County, Florida. (Doc. 1, Compl. ¶¶ 14, 16;

[2] Reinhold has agreed to the return of the earnest money allocated to the Phase 3 Parcel prior to Jax-Palatka filing of this action and reiterates its agreement that those funds may be released to Jax-Palatka at any time. Reinhold makes no claim to the earnest money allocated to the Phase 3 Parcel. The escrow funds are being held by First American Title Insurance Company pursuant to an Acknowledgement of Escrow Funds between First American and Jax-Palatka and to which Reinhold is not a party.

Doc. 1-1, PSA Exhibit "A" to Compl.)

2. The PSA described four parcels of property: (a) the Base Parcel (11,698 acres), (b) the Storm Water Pond Parcel (22 acres), (c) the Mitigation Bank Parcel a/k/a the Phase 3 Parcel (1,389 acres) and (d) the Iluka Parcel (322 acres), each of which had its own closing deadline. (Doc. 1, Compl. ¶¶ 14–15; Doc. 1-1, PSA §§ 1.1(a)–(d), 2.3 and 11.1.)

3. The only parcel at issue in this litigation is the Phase 3 Parcel located within a mitigation bank, known as the Greens Creek Mitigation Bank. (Doc. 1, Compl. ¶ 7.)

4. A mitigation bank is a tract of real property heavily regulated for environmental preservation purposes. (Doc. 1, Compl. ¶¶ 8, 21–23.)

5. A mitigation bank is subject to certain rules and requirements relating to the permissible use of the property, providing for the restoration, preservation, or creation of wetlands, uplands, or other aquatic area. (Doc. 1, Compl. ¶ 21.) The purpose of mitigation banking is to designate certain property for environmental rehabilitation, restoration and preservation (the mitigation bank site), which can be used to offset the damage to ecological habitats caused by developments elsewhere, through the conservation, restoration or preservation of the ecosystem within the mitigation bank site. (*Id.*)

6. Mitigation banks in Florida are regulated by multiple Florida and Federal agencies. Permitting of these banks in Clay County, Florida is controlled by the Department of Environmental Protection, the Army Corps of Engineers, and

the St. Johns River Water Management District. (*Id.* at ¶¶ 23–25.)

7. Reinhold was not required to sell any of the acres within the Phase 3 Parcel unless and until the regulatory agencies amended the permits for the Mitigation Bank to release those acres. (*Id.* ¶ 8; Doc. 1-1, PSA §§ 2.1, 3.1.)

8. The PSA contemplated the possibility that the regulatory agencies may decline to release all or some of the acreage comprising the Phase 3 Parcel from the Mitigation Bank, which would mean that Jax-Palatka would not be able to purchase the Phase 3 Parcel. (Doc. 1, Compl. ¶ 16.) The contract provided a precise formula to reduce the total purchase price based on an agreed upon price per acre and the number of acres not released prior to the Phase 3 closing date. (*Id.* at ¶ 16; Doc. 1-1, PSA § 2.1.)

9. More specifically, Section 2.1 of the PSA established that in the event Reinhold (a) did not obtain the release of all of the acreage in the Phase 3 Parcel from the Mitigation Bank or (b) was unable to eliminate or reduce the acreage within the Mitigation Bank on or before November 30, 2024, the unreleased acreage would be subtracted from the conveyed property and the purchase price would be reduced at a rate of $2,750/acre. (Doc. 1-1, PSA § 2.1.)

10. Further, the PSA required that the Phase 3 Earnest Money deposited by Jax-Palatka in escrow be returned to Jax-Palatka if Reinhold were unable to obtain a release of the acreage from the Mitigation Bank by November 30, 2024, or close on such land by December 31, 2024. (Doc. 1-1, PSA § 2.2(c).)

11. When the sale of acres in the Base Parcel closed in September 2020,

the PSA provided that "the Closing on the Mitigation Bank Parcel shall be deferred and $450,000 of the Earnest Money shall be allocated thereto and shall remain in escrow." (Doc. 1, Compl. ¶ 17; Doc. 1-1, PSA § 3.1.)

12. Section 11.1 confirms this stating "[i]f lands from the Mitigation Bank are not sold at the initial closing, $450,000 of the Earnest Money shall be carried forward for the Mitigation Bank Closing." (Doc. 1, Compl. ¶ 17; Doc. 1-1, PSA § 11.1.)

13. The Parties executed three amendments to the PSA. (Doc. 1, Compl. ¶ 18; Doc. 1-1, First Amendment, Second Amendment, Third Amendment.) The Third Amendment was designed, *inter alia*, to extend two critical deadlines for the Phase 3 transaction—the deadline by which Reinhold was to obtain a release of the Phase 3 acreage from the Mitigation Bank (the "Release Deadline") and the Phase 3 Closing Date for any released acreage. (Doc. 1-1, p. 253, Third Amendment §§1–5, 7)

14. The Third Amendment, dated October 31, 2024, extended the Release Deadline from November 30, 2024, to March 31, 2025, and the Phase 3 Closing Date from December 31, 2024, to April 30, 2025. (Doc. 1, Compl. ¶ 19; Doc. 1-1, Third Amendment § 7.)

15. The Parties agreed that if the Phase 3 Parcel had not been released from the Mitigation Bank by March 31, 2025, and if the Parties had not otherwise agreed in writing to the purchase of other property of Reinhold in lieu of the Phase 3 Parcel, then each of the release and closing deadlines would be extended an

additional 90 days. (Doc. 1, Compl. ¶ 19; Doc. 1-1, Third Amendment § 7.)

16. As of March 31, 2025, the Phase 3 Parcel had not been released, and the Parties had not agreed to any substitute property for the Phase 3 Parcel. (Doc. 1, ¶ 19.) The deadline for obtaining the release of the Phase 3 Parcel was thus extended to June 30, 2025, and the closing date was extended to July 29, 2025.

17. These deadlines occur in this order as the Contract also contemplated Reinhold's obtaining a survey of the released acreage to facilitate the identification, location, and transfer of the correct acreage and property. (Doc. 1-1, ¶ 5.2)

18. It is undisputed that the Phase 3 Parcel was never released from the Mitigation Bank. (Doc. 1, generally)

19. As a result, the required survey never happened as without the release of all or a portion of Phase 3 Parcel, there was no released acreage to survey.

20. Also, as a result, no released acreage was transferred to Jax-Palatka on the Phase 3 Closing Date. At that time, there was no released acreage to survey and transfer.

21. The PSA provided that the earnest money allocated to the Phase 3 Parcel would either be credited against the purchase price of the Phase 3 Parcel at closing or returned to Jax-Palatka when the time by which to close expired. (Doc. 1-1, PSA § 11.1 ("After the Mitigation Bank Closing has occurred or the time therefore expired, only $5,000 shall thereafter be held in escrow . . . .").)

22. Jax-Palatka alleges that Reinhold made no credible effort to amend its mitigation banking permit to release the Phase 3 Parcel from the Mitigation

Bank and failed to convey title to the Parcel, thereby breaching the PSA and implied covenant of good faith and fair dealing. (Doc. 1, Compl. ¶ 20.)

23. Jax-Palatka "requests entry of a judgment against Defendant, Reinhold, adjudicating and granting: (i) specific performance requiring Reinhold to amend its mitigation banking permits to release the Phase 3 Parcel from the Mitigation Bank and convey the released parcel to Jax-Palatka," or alternatively, (ii) in addition to returning the remaining Earnest Money, an award of money damages equal to the fair market value of the Phase 3 Parcel as of the date of Reinhold's breach of the PSA and its Amendments, less the purchase price of such property in the PSA, plus pre-judgment interest, due diligence and title investigatory expenses and attorneys' fees and costs. (Doc. 1, Compl. pp. 11–12 at Wherefore Clause.)

24. The parties clearly and unambiguously agreed in advance to limit the contractual relief available in the event the Phase 3 Parcel was not sold. (Doc. 1-1, PSA § 14.1) If the sale was not completed due to an alleged default by Reinhold, Jax-Palatka is entitled "as its sole and exclusive remedy," to either:

> (i) terminate the Agreement and receive a refund of its Earnest Money; or
>
> (ii) pursue specific performance.

(*Id.*) Additionally, Jax-Palatka "waive[d] any right to pursue any other remedy at law or equity . . . including without limitation, any right to seek, claim, or obtain damages, punitive damages or consequential damages." (*Id.*)

25. Except as provided in two limited exceptions, the parties further agreed that:

> in no case shall Seller ever be liable to Purchaser under any statutory, common law, equitable, or other theory of law, either prior to or following the Closing, for any lost rents, profits, "benefit of the bargain," business opportunities, or any form of consequential damage in connection with any claim . . . relating to the Property[.]

(*Id.*)

26. The two exceptions to this negotiated remedy are not at issue here. The first exception is only triggered if Reinhold "intentionally encumbers" the land and provided that Jax-Palatka may pursue a claim for actual damages if that occurs. (*Id.* at § 14.1(a).) The second exception only applies if Reinhold "contumaciously refuses" to perform its obligation to close on property and provided that Jax-Palatka could receive in addition to the return of its Earnest Money, its out-of-pocket costs and attorney's fees not to exceed 1% of the Purchase Price of the Base Parcel if such a refusal occurred. (*Id.* at § 14.1(b).) The PSA further qualified this second exception and stated that the extra remedy created by the exception terminated upon the closing of the Base Parcel. (*Id.*)

27. These two exceptions are not at issue. Jax-Palatka does not contend that Reinhold has encumbered the Phase 3 Parcel in a manner that frustrates the remedy of specific performance. (Doc. 1, Compl.) Jax-Palatka also closed on the much larger Base Parcel in September 2020 (Doc. 1, Compl. ¶ 32), thus terminating the right to pursue out-of-pocket expenses and fees under Section 14.1(b).

28. The operative pleadings and exhibits establish that the Release Deadline by which Reinhold was required to obtain a release of all or some of the Phase 3 Parcel from the Mitigation Bank was June 30, 2025.[3] (Doc. 1-1, Third Amendment § 7.) Reinhold had not obtained the release by that date as Jax-Palatka knew. (Doc. 1, Compl., at 3, 5-6, 9, ¶¶ 10, 19 n.2, 20, 35.) Jax-Palatka and Reinhold also agreed in the PSA that time is of the essence. (Doc. 1-1, PSA § 15.9.)

29. Jax-Palatka filed its Complaint seeking specific performance on July 2, 2026. (Doc. 1, Compl.)

## III. ARGUMENTS AND AUTHORITY

### A. Standard for Judgment on the Pleadings

After pleadings are closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). When evaluating a motion for judgment on the pleadings filed by a defendant, a court must accept the material facts alleged in the complaint as true and view those facts in the light most favorable to the plaintiff. *Id.* Any documents attached to or incorporated in the Complaint by reference may be considered by the Court.

[3] The agreed upon deadline established by the Third Amendment was June 29, 2025, a Sunday. § 15.9 of the PSA moved this deadline to the next business day, Monday, June 30, 2025.

*Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002); *see also* Fed. R. Civ. P. 10(c) (exhibits are part of pleadings for all purposes). In such instances where the exhibits contradict the allegations in the Complaint, the exhibits govern. *Griffin Indust., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

Interpreting a clear and unambiguous contract is a question of law and therefore may be decided on motion for judgment on the pleadings. *Perez*, 774 F.3d at 1340; *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014). Federal courts apply the substantive law of the forum state when interpreting private contracts. *In re: Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009). When the language of an agreement is clear and unambiguous, the court must interpret it according to its plain meaning. *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) (applying Florida law to interpret an insurance contract); *see also Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 433 (Fla. 1980) ("When [the] language is clear and unambiguous, the courts cannot indulge in construction or interpretation of its plain meaning."). It is inappropriate for the court to rely on extrinsic evidence when the contract is clear and unambiguous. *Key*, 90 F.3d at 1549. Similarly, the court is powerless to rewrite a contract. *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1297 (11th Cir. 2019) (applying Florida law).

### B. Jax-Palatka is not entitled to monetary damages beyond the return of earnest money allocated to the Phase 3 Parcel.

Jax-Palatka has asserted claims for unliquidated money damages, including "benefit of the bargain" damages, incidental damages, and consequential damages.

(Doc. 1, pp. 11–12.) These monetary claims fail as a matter of law because Jax-Palatka agreed in the PSA that its "sole and exclusive remedy" was either (i) a refund of its earnest money deposit or (ii) specific performance of the PSA. (Doc. 1-1, PSA § 14.1.) Jax-Palatka further "waive[d] any right to pursue any other remedy at law or equity for such default of Seller, including, without limitation, any right to seek, claim, or obtain damages, punitive damages, or consequential damages." (*Id.*)

There can be no doubt as to the parties' intentions with these remedy provisions as Jax-Palatka further agreed as follows (subject to certain exceptions not applicable in the instant case):

> in no case shall Seller ever be liable to Purchaser under any statutory, common law, equitable, or other theory of law, either prior to or following the Closing, for any lost rents, profits, "benefit of the bargain," business opportunities, or any form of consequential damage in connection with any claim, liability, demand, or cause of action in any way or manner relating to the Property, the condition of the Property or under this Agreement.

(Doc. 1-1, PSA § 14.1(b).)[4]

These remedy provisions were part of the parties' negotiated allocation of risk for a pre-closing breach by the other. With certain exceptions not applicable here, the parties mutually agreed that the sole monetary remedy for each party for

[4] Sections 14.1(a) and (b) of the PSA provide the two exceptions under which Jax-Palatka could recover certain monetary damages over and above return of the Earnest Money for a pre-closing breach. Neither apply here.

a pre-closing breach by the other was simply the earnest money deposit. For Jax-Palatka, the PSA fixes Jax-Palatka's potential monetary recovery at the return of its earnest money deposit. (Doc. 1-1, PSA § 14.1.) $450,000 is the agreed portion of the deposit allocated to the Phase 3 Parcel and none of the other recovery rights retained by Jax-Palatka apply. Thus, return of the $450,000 is Jax-Palatka's sole monetary remedy for Reinhold's failure to release the Phase 3 Parcel. Similarly, Reinhold's sole remedy, if Jax-Palatka failed to close, was limited to receipt of the earnest money deposit (unlike Jax-Palatka, Reinhold did not retain the right to specific performance of the contract, nor a right to additional damages for a "contumacious" pre-closing breach by Jax-Palatka). (Doc. 1-1, PSA § 14.2.)

Under Florida law, parties are free to agree in their contracts to limit damages for breach. *Inlet Beach Cap. Invs., LLC v. F.D.I.C.*, 778 F.3d 904, 906–07 (11th Cir. 2014) (citing *Ament v. One Las Olas, Ltd.*, 898 So. 2d 147, 151 (Fla. 4th DCA 2005)). Provisions limiting remedies are enforceable unless they reflect an unreasonable disparity in remedy alternatives available to the parties. *Id.* (citing *Terraces of Boca Assocs. v. Gladstein*, 543 So. 2d 1303, 1304 (Fla. 4th DCA 1989)). In the instant case, there is no viable argument of an unreasonable disparity in remedies as Jax-Palatka retained remedies far beyond what Reinhold retained.

For pre-closing breaches, Jax-Palatka retained the right to (1) return of its earnest money deposit, (2) specific performance, and (3) monetary damages in excess of its earnest money deposit if Reinhold encumbered the property or contumaciously refused to close on the Base Parcel (which represented nearly 90%

of the property covered by the PSA). (*Compare* Doc. 1-1, PSA § 14.1, *with* § 14.2.) Reinhold on the other hand was limited to only the earnest money deposit if Jax-Palatka refused to close.

Florida law upholds the parties' ability to adopt contractually defined remedies similar to the mutual provisions adopted by Jax-Palatka and Reinhold in the instant case. *See, e.g.*, *Inlet Beach*, 778 F.3d at 907–08 (dismissing buyer's claims for money damages in excess of return of earnest money deposit because, *inter alia*, sellers were likewise limited to only the earnest money deposit for pre-closing breach); *Barnes v. Diamond Aircraft Indus., Inc.*, 499 F. Supp. 2d 1311, 1318 (S.D. Fla. 2007) (upholding at summary judgment contractual limitation of remedy provision that limited buyer's remedy solely to the return of an escrow deposit because provision was bilateral); *see also U.S. Water Servs. Corp. v. XYLEM Water Sol. U.S.A., Inc.*, 2025 WL 3080106, at *4 (M.D. Fla. Oct. 1, 2025) (entering judgment on the pleadings in favor of defendant based on exclusive repair / replacement remedy provision of parties' contract).

The *Inlet Beach* opinion is particularly instructive as the court found mutuality was present primarily due to the seller also being limited to only the earnest money deposit for a pre-closing breach and thus enforceable against the buyer. 778 F.3d at 908. The court reasoned that the *Inlet Beach* buyer's pre-closing remedies, which were limited to return of its deposit and up to $1,000 in out-of-pocket expenses, were not unreasonably disparate to the seller's pre-closing remedy of receipt of the deposit. *Id.* Notably, Reinhold as the seller is limited in

the same manner as the *Inlet Beach* seller.

Here the parties' agreement limited monetary relief available to both sides for pre-closing breaches to the earnest money deposit, with only Jax-Palatka retaining the right to seek specific performance or additional damages for Reinhold contumaciously refusing to close on the Base Parcel. As in *Inlet Beach*, it is clear that "the parties' respective remedies are not unreasonably disparate, and thus, there is no lack of mutuality." *Id.* Accordingly, the PSA's remedy provision is fully enforceable, and Jax-Palatka's claim for money damages in excess of the earnest money allocated to the Phase 3 Parcel fails as a matter of law.

**C. Jax-Palatka's claim for specific performance also fails as a matter of law.**

Jax-Palatka's Complaint alleges two breaches against Reinhold. (Doc. 1, ¶ 47.) First, the Complaint alleges that Reinhold breached the PSA by "making no reasonable efforts to amend its mitigation banking permits to release the Phase 3 Parcel from the Mitigation Bank." (*Id.*) The Complaint also alleges in the same paragraph that Reinhold breached by "failing to convey title to such parcel to Jax-Palatka." (*Id.*) The Complaint then requests ". . . specific performance requiring Reinhold to amend its mitigation bank permits to release the Phase 3 Parcel from the Mitigation Bank and convey the released parcel to Jax-Palatka . . . ." (*Id.* at WHEREFORE cl.) These allegations recognize that, under the PSA, the release of acreage from the mitigation bank was a prerequisite to identifying the acres to be released and then conveyed to Jax-Palatka. In other words, only the acreage in the

Phase 3 Parcel actually released from the mitigation bank was to be conveyed. Under these circumstances, Jax-Palatka's specific performance claims fail as a matter of law.

**1. There is no identified, released acreage to transfer.**

Jax-Palatka's claim to force Reinhold to "amend its permits" and then "convey the released parcel" fatally suffers from a lack of clarity, definiteness, and certainty required to support specific performance because there are no released acres for Reinhold to survey, legally identify, and transfer. *Barnes*, 499 F. Supp. 2d at 1319 (noting that "[t]o be subject to specific performance, the obligations of the parties with respect to the conditions of the contract and actions to be taken by the parties must be clear, definite and certain.") (citing *de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 682 (Fla. 1st DCA 2007)).

Specific performance is only available when a contract is definite, certain, and complete as to the materials that the court must use to determine the obligations of each party to craft an enforceable order. *Topper v. Alcaraz Operating Co.*, 35 So. 2d 392, 426 (Fla. 1948) (specific performance is not available when the contract is not definite and certain as to essential terms and conditions and legal presumptions or applications of customs cannot fill the gap); *see also Humphrys v. Jarrell*, 104 So. 2d 404, 410 (Fla. 2d DCA 1958); *Camichos v. Diana Stores Corp.*, 25 So. 2d 864, 868–70 (Fla. 1946) (holding that lease term stating that lessee shall have right of first refusal for an addition term but leaving open term and rental amount is too indefinite to enforce by specific performance).

The specificity and details of a contract necessary to allow specific performance vary with the complexity of the transaction. *Farrell v. Phillips*, 414 So. 2d 1119, 1120 (Fla. 4th DCA 1982). When an agreement governs a real property transaction "of considerable size and complexity," specific performance is only proper when the contract supplies the details about the transaction necessary to give the parties certainty about what performance is required. *Id.* ("[T]erms must be expressed with reasonable certainty considering 'the subject-matter of the agreement, the purposes for which it was entered into, the situation and relation of the parties, and the circumstances under which it was made.'"). And, when the parties have left uncertain the details required to measure performance, the court is powerless to supply the material terms missing from the contract to make it definite enough for specific performance. *Id.*

With respect to the Phase 3 Parcel, the PSA does not specify the necessary details to support specific performance. The contract does not specify (and cannot predict with any definiteness) exactly how many acres will be released by the federal and state regulators; does not provide the criteria for determining exactly which acres will be released; does not identify the standard to be applied to determine whether the necessary approvals can be obtained; does not identify the standards to be applied to determine whether Reinhold must accept additional conditions that the regulators may require of Reinhold to obtain any release; and does not describe the release mechanism Reinhold must employ. (*See generally* Doc. 1-1.) Because the contract does not include clear, definite, and certain

provisions to be specifically performed when seeking a release of the Phase 3 Parcel, that relief is unavailable. This absence of detail is fatal to a request for specific performance because it asks the Court to fashion terms that do not exist. *See, e.g.*, *Mori v. Fortune Cap. Partners, Inc.*, 316 So. 3d 744, 745–46; *see also Lasseter v. Dauer*, 211 So. 2d 584, 585 (Fla. 3d DCA 1968) (a mortgage contract that does not specify time for performance, the method of making and securing deferred payments, and the extent payments are subordinated cannot be enforced by specific performance).

The importance of definiteness is heightened given that the PSA recognized all or some portion of the Phase 3 Parcel may not be released:

> In the event Seller (x) does not release all of the Mitigation Bank Parcel from Phase 3 of Greens Creek Mitigation Bank (the "Mitigation Bank"), or (y) is unable to eliminate or reduce the acreage currently within the Mitigation Bank on or before November 30, 2024, such unreleased acreage shall be subtracted from the Property based on a valuation of Two Thousand Seven Hundred Fifty and No/100 Dollars ($2,750.00) per acre.

(Doc 1-1, PSA § 2.1.) The fact the parties anticipated that Reinhold as the Seller may be "unable to . . . reduce the acreage currently within the Mitigation Bank . . ." shows that it was acknowledged from the outset that none of the Phase 3 Parcel may get released and conveyed. Given that this provision recognized that some or all of the Phase 3 Parcel may never get released and conveyed, the obligation to transfer some undetermined "to be released" portion of the Phase 3 Parcel is not capable of specific performance. *Venema v. Tost*, 424 So. 2d 786 (Fla. 3d DCA

1982) (holding contract for conveyance of real property is not capable of specific performance when property to be conveyed is not adequately described).

A decree compelling Reinhold to "specifically perform" under the PSA by amending its permits to release the property is not possible because Reinhold does not have the authority to unilaterally amend the permits and declare property "released" from the mitigation bank. Here Reinhold lacks the unilateral authority to amend its permits issued by federal and state regulatory agencies to release the property. Only the regulatory agencies that issued the permits have discretion to approve or condition any release of acres from the Mitigation Bank. (Doc. 1, Compl. ¶¶ 8, 21–23); *see* 33 C.F.R. Part 332; Fla. Stat. §§ 373.4141, 373.4136; Fla. Admin. Code r. 62-342.450.

Thus, any order that requires Reinhold to specifically perform by obtaining a release of Phase 3 acreage would require an outcome that can only be decided by federal and state permit-modification processes managed by regulatory agencies that are not parties to this suit, and whose discretionary authority the Court cannot supplant. *See* 33 C.F.R. Part 332; Fla. Stat. §§ 373.4141, 373.4136; Fla. Admin. Code r. 62-342.450; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–65 (2004) (holding that federal courts may not dictate what an agency's discretionary decision must be); *Dep't of Revenue ex rel. Jackson v. Nesbitt*, 975 So. 2d 549, 551 (Fla. 4th DCA 2008) (holding that a trial court may not interfere with and does not have the authority to enter into the decision-making process which is delegated to a state agency) (citing *Agency for Pers. with Disability v. J.M.*, 924 So. 2d 1, 2 (Fla.

3d DCA 2005) (holding the trial judge had neither the jurisdiction nor the authority to make the determination of whether petitioner met the "crisis" criteria or to order the Agency to provide services to petitioner as such discretionary decision-making authority lies only with the Agency)).

Florida law does not recognize specific performance as a contractual remedy under these circumstances. *Clay v. Monroe Cnty.*, 849 So. 2d 363, 365 (Fla. 3d DCA 2003). In *Clay*, Florida's Third District Court of Appeal considered issuance of a writ of mandamus ordering Monroe County to issue building permits. *Id.* Monroe County explained that it could not issue the permits until certain property owners obtained environmental coordination letters from the U.S. Fish and Wildlife Service. *Id.* The court aptly held that the County was justified not issuing the building permits in light of this condition stating that "there is no legal basis on which [the court] can override the jurisdiction of the federal agency [U.S. Fish and Wildlife Service]" established by federal law. *Id.* For the same reasons, this Court cannot order conveyance of the Phase 3 Parcel because doing so turns on Reinhold obtaining approvals of the St. Johns River Water Management District and Army Corps of Engineers, whose jurisdiction and authority the Court cannot override by ordering them to exercise their discretion in order to amend the permits. *Norton*, 542 U.S. at 65 ("when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be.").

Because there are no identifiable acres for Reinhold to convey to Jax-Palatka, and because Reinhold amending its permits to obtain a release of any acreage depends on discretionary decisions by non-party agencies, the specific performance sought is unavailable in this case as a matter of law.

**2. Specific performance requiring Reinhold to release acres from the Phase 3 Parcel is time barred.**

Anticipating that Jax-Palatka may take the position that the Court can require Reinhold to specifically perform by applying to modify the Mitigation Bank permits, such a remedy is also unavailable because it is time-barred.

As discussed above, the Complaint alleges that Reinhold breached the PSA by failing to make reasonable efforts to timely amend its permits to obtain releases of the Phase 3 Parcel from the Mitigation Bank. (Doc. 1, ¶ 47.) The Release Deadline for Reinhold to amend its permits and obtain a release was June 30, 2025. Isolating the actual breach alleged (failure to amend the permits and obtain a release before the June 30, 2025 deadline) from the consequence of that alleged breach (no released acreage to convey on the July 31, 2025 closing date) demonstrates that the Complaint filed on Thursday, July 2, 2026, is after the one-year statute of limitations for specific performance on Reinhold's alleged obligation to obtain the necessary release (which expired on Tuesday, June 30, 2026). Thus, any request by Jax-Palatka for the Court to require Reinhold "amend its mitigation banking permits to release the Phase 3 Parcel" is time-barred.

When it is apparent from the face of the complaint that the statute of

limitations for a claim has expired, judgment as a matter of law in favor of a defendant is appropriate. *Myers v. Provident Life and Accident Ins. Co.*, 472 F. Supp. 3d 1149, 1162 (M.D. Fla. 2020) (dismissing contract-based claims due to the untimeliness that was apparent on the face of the complaint) (citing *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018)). Such is the case here.

A legal issue surrounding a statute of limitations is an issue of law. *Ranucci v. City of Palmetto*, 317 So. 3d 270, 274 (Fla. 2d DCA 2021). The cause of action accrues when the last element constituting the cause of action occurs. *Id.* For specific performance, the statute of limitations begins to run on the date the agreement is breached. *Id.* at 275; *Med. Jet, S.A. v. Signature Flight Supp.–Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. 4th DCA 2006) ("Florida has followed this general rule that a cause of action for breach of contract accrues at the time of the breach, 'not from the time when consequential damages result or become ascertained.'") (quoting *Fradley v. Cnty. of Dade*, 187 So. 2d 48, 49 (Fla. 3d DCA 1966)). Nor does the "discovery rule" apply in Florida to breach of contract situations to delay or toll the running of a statute of limitations. *See, e.g.*, *Access Ins. Planners, Inc. v. Gee*, 175 So. 3d 921, 925 (Fla. 4th DCA 2015). Thus, as a matter of law, the statute of limitations on Jax-Palatka's specific performance claim based on Reinhold's alleged failure to obtain a timely release of the Phase 3 Parcel from the Mitigation Bank started running no later than the date of the breach—when Reinhold failed to obtain the releases by the June 30, 2025 deadline.

This necessarily means the applicable statute of limitations to compel specific performance of this obligation expired no later than June 30, 2026. § 95.11(6)(a), Fla. Stat. (2026).

Florida law is the controlling law for the substantive rights of the parties in this diversity action. As such, the Florida statutes of limitations apply to Jax-Palatka's claims. *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1320 (M.D. Fla. 2013) (citing *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280 (11th Cir. 2003)). This means that the one-year statute of limitations for specific performance claims set forth in Section 95.11(6)(a) of the Florida Statutes applies in this case. This short, one-year statute of limitations for specific performance "encourage[s] the alienability of real property" and is routinely enforced. *Rybovich Boat Works v. Atkins*, 585 So. 2d 270, 271 (Fla. 1991).

The Release Deadline by which Reinhold was to obtain release of the Phase 3 Parcel was June 30, 2025. (Doc. 1-1, PSA § 11.1; Third Amendment.) Under Section 95.11(6)(a), Jax-Palatka had one year through June 30, 2026, to file its claim for specific performance based on a breach of any obligation to obtain a release of the Phase 3 Parcel. Jax-Palatka did not file the instant action until July 2, 2026—two days after the applicable statute of limitations ran for its claim for specific performance to require "Reinhold to amend its mitigation bank permits to release the Phase 3 Parcel from the Mitigation Bank." As in *Rybovich*, this claim for specific performance is time-barred.

## IV. CONCLUSION

Under the PSA, Jax-Palatka's "sole and exclusive remedy" for a pre-closing breach by Reinhold is either the return of its earnest money deposit or specific performance. This necessarily means that Jax-Palatka's sole remedy in this case is the return of the earnest money allocated to the Phase 3 Parcel because its request for specific performance fails as a matter of law for the reasons discussed above. Jax-Palatka did not assert its claim for specific performance relating to obtaining the release of the Phase 3 Parcel from the Mitigation Bank within the statutory limitations period, and Jax-Palatka did not assert is claim for specific performance of any obligation to "convey the released parcel" in a manner that the Court may actually enforce. For these reasons, Reinhold is entitled to judgment on the pleadings limiting Jax-Palatka's available damages to the return of the $450,000 in Earnest Money remaining in escrow.[5] Reinhold has given Jax-Palatka and the escrow agent its written consent to the escrow agent releasing the Earnest Money to Jax-Palatka (and reiterates such consent here again).

WHEREFORE, Reinhold respectfully requests that this Court enter an order for judgment on the pleadings that (1) Jax-Palatka is not entitled to monetary damages in excess of the return of the earnest money allocated to the Phase 3 Parcel, (2) Jax-Palatka is not entitled to any specific performance relating to the Phase 3 Parcel, and that the Court reserves jurisdiction to determine Reinhold's entitlement to attorney's fees and costs pursuant to Section 15.13 of the PSA.

---

[5] *See* fn. 2.

Dated October 14, 2026.

**BISHOP & PAGE, PLLC**

*/s/ Thomas E. Bishop*

Florida Bar Number 956236
Whitney K. McGuire
Florida Bar Number 34984
Alexander Thomas Briggs
Florida Bar Number 117490
Alison A. Blake
Florida Bar Number 0584967
510 N. Julia Street
Jacksonville, FL 32202
(904) 598-0034/(904) 598-0395 (fax)
*tbishop@bishoppage.com*
*wmcguire@bishoppage.com*
*abriggs@bishoppage.com*
*ablake@bishoppage.com*
*service@bishoppage.com*

*Counsel for Reinhold Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 14th day of October, 2026, a true and correct copy of the foregoing has been electronically filed with the Clerk of the U.S. District Court, Middle District of Florida, via the CM/ECF filing portal, with a copy electronically delivered through the CM/ECF to the following:

Mark S. Mitchell
1301 Riverplace Boulevard, Suite 1500
Jacksonville, Florida 32207
*mmitchell@rtlaw.com*
*lcain@rtlaw.com*

*/s/ Thomas E. Bishop*
Counsel